UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-14480-ROSENBERG/Hopkins

HIRAM OBREGON,

    Plaintiff,

v.

SHERIFF PAUL BLACKMAN, in his
official capacity as Sheriff of
Highlands County, Florida

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant, Sheriff Paul Blackman's Motion for Summary Judgment [D.E. 46], filed September 5, 2017 (the "Motion"). Plaintiff, Hiram Obregon filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [D.E. 57] on October 3, 2017 (the "Response"). Defendant filed a Reply [D.E. 58] on October 10, 2017. The Court has carefully considered the Complaint [D.E. 1], the written submissions, the factual record, and applicable law.

### I.     BACKGROUND

Plaintiff, Hiram Obregon, a Hispanic male, was hired as a Sheriff's Deputy with the Highlands County Sheriff's Office (the "Sheriff's Office") on October 3, 2012. (Compl. ¶ 11; Obregon Dep. 17:4-17:7). As part of his employment, Plaintiff was assigned a patrol vehicle. (Obregon Depo. 23:1-23:9). Plaintiff's vehicle contained Mobile Video Recording ("MVR") equipment, which automatically activates and creates a video recording when the vehicle in which it is installed exceeds a "speed trigger" of 90 MPH. (*Id*. 52:4-52:25). On April 28, 2013,

1

while conducting a routine review of MVR in-car videos, Lieutenant Keith Starling observed that Plaintiff had a speed-triggered MVR activation. (Def. Facts Ex. 1 – Part 2 [D.E. 47-2] at 1, 37;[1] Def. Facts Ex. 2 [D.E. 47-3] ¶ 6). Under the Sheriff's Office policy, police vehicles are prohibited from exceeding posted speed limits unless the officer is in a "Code Three" emergency situation. (Def. Facts Ex. 1 – Part 2 [D.E. 47-2] at 30).

On April 29, 2013, during his scheduled day off, Plaintiff responded to a call from Lieutenant Gus Garcia and agreed to transport a 14-year old minor from Lake Placid, Florida, to Tampa, Florida. (*Id*. at 37-38). Plaintiff picked up the minor in his regular patrol vehicle. (Obregon Dep. 62:6-62:11). During the course of Plaintiff's transport of the minor, an off-duty officer of the Tampa Police force, Sergeant P.J. Gray, contacted the Sheriff's Office to report Plaintiff's driving, stating he had witnessed Plaintiff's vehicle driving "in excess of 70-75 mph darting in and out of rush hour traffic," and reporting at one point witnessing the vehicle "[drive] on the shoulder and then [jump] back into the lane of traffic cutting off vehicles." (Def. Facts Ex. 1 – Part 2 at 21-22, 38). Due to its driving pattern, Sergeant Gray suspected Plaintiff's vehicle may have been stolen. (*Id.* at 21-22, 38). Approximately 30 minutes after Sergeant Gray's call, an "unknown male" contacted the Sheriff's Office and identified Plaintiff's vehicle driving "irresponsibly," namely, "driving on top of people . . . swerving in and out . . . [and] not using his signal." (*Id*. at 23, 38-39).

On May 1, 2013, in response to the two phone calls received on April 29, Lieutenant Starling completed a more fulsome review of Plaintiff's MVR videos, discovering a total of 11 "speed trigger related videos." (*Id*. 1, 40; Def. Facts Ex. 2 ¶ 9). Based on the two phone calls and these 11 videos, Lieutenant Starling suggested further review of Plaintiff's actions. (Def.

---

[1] The Court uses the pagination generated by the CM/ECF filing system, which appears as a header on all court filings.

Facts Ex. 1 – Part 2 at 1). On May 1, 2013, Major David Paeplow, who was Plaintiff's supervisor at all times relevant to this lawsuit, informed Plaintiff he was being "temporarily assigned to the Court Related Services pending the outcome of an investigation regarding General Order violations." (*Id*. at 2; Compl. ¶ 14).

Lieutenant Darin Hood conducted an internal investigation, which included an interview of the Plaintiff; on June 4, 2013, Lieutenant Hood submitted an Internal Investigation Report (the "Report"). (Def. Facts Ex. 5 [D.E. 47-6] ¶¶ 2-3; Def. Facts Ex. 1 – Part 2 at 37-53). The Findings of Fact in the Report describe: Nine separate instances of Plaintiff driving in excess of 90 MPH without emergency lights or siren in non-Code Three emergency situations (Def. Facts Ex. 1 – Part 2 at 6-28, 44-52);[2] Plaintiff's deactivation of the MVR equipment during each of these nine instances without submission of a reason for deactivation (*Id.*); the "unprofessional" manner in which Plaintiff drove on August 29 while transporting the minor, as witnessed by Sergeant Gray (*Id*. at 22, 51); and an instance of Plaintiff "cursing" in front of said minor during the transport. (*Id*. at 52).

Major Paeplow reviewed the Report and on June 19, 2013, submitted to Plaintiff a Notice of Proposed Disciplinary Action, proposing Plaintiff's dismissal from the Sheriff's Office— citing violations of Sheriff's Office General Orders #2216.00(I.E.), #420.00(IV.B.), and #1061.00(C.1.).[3] (*Id*. at 6, 37, 54; Def. Facts Ex. 2 ¶ 12). The Notice of Proposed Disciplinary

---

[2] Defendant asserts there were 10 such incidents (Motion 6), however, from examining the Report, the Court counts only nine. This difference is immaterial to the Court's final disposition.

[3]
> General Order #2216.00(I.E.) Normal Vehicle Operation – Code One (1): Under normal, non-emergency operating conditions, and while responding to a non-emergency call for service, emergency lights and siren will not be used. Operators of Sheriff's Office Vehicles will strictly adhere to all traffic laws and will drive defensively in a safe and courteous manner, setting a model standard for traffic safety.

3

Action also notified Plaintiff of a Pre-Disciplinary Hearing, scheduled for June 26, 2013, during which he would be given the opportunity to address the findings of the internal investigation and the proposed disciplinary action. (Def. Facts Ex. 1 – Part 2 at 54). Plaintiff attended the Pre-Disciplinary Hearing as scheduled. (Obregon Dep. 72:21-75:8).

On June 28, 2013, Major Paeplow issued a Memorandum, adopting the Findings of Fact from the Report, sustaining his previously cited General Order violations, and recommending Plaintiff's dismissal. (Def. Facts Ex. 1 – Part 2 at 56; Def. Facts Ex. 6 [D.E. 47-7]). On July 3, 2013, Sheriff Susan Benton approved the recommended discipline, and Plaintiff was dismissed from his position with the Sheriff's Office. (Def. Facts Ex. 1 – Part 2 at 57).

Following his termination, Plaintiff filed a formal charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), claiming he was fired from the Sheriff's Office because of his national origin, in violation of Title VII of the Civil Rights Act of 1964. (Def. Facts Ex. 1 – Part 2 at 76; Compl. ¶ 6). The EEOC issued to Plaintiff a Notice of Right to Sue Letter, giving him the option of filing a civil action in an appropriate United States District Court. (Compl. ¶ 7). As a result, on October 28, 2016, Plaintiff filed the Complaint, which alleges race discrimination in violation of Title VII—specifically that the motivating factor in the decision to fire him was his Hispanic race. (Compl. ¶ 23).

---

> General Order #4200.00 Mobile Video Recording Equipment (IV.B.) The MVR may be manually deactivated after the deputy records a brief explanation for the deactivation prior to turning the MVR off.
>
> General Order #1061.00 Code of Conduct (C.1.) Members shall be responsive to the needs of our community by rendering prompt and courteous service, and consistently conducting themselves in a manner that encourages respect . . . .

(Def. Facts Ex. 1 – Part 2 at 30, 54).

## II. LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-CV-21516, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is material if "it would affect the outcome of the suit under the governing law . . . ." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). At the summary judgment stage, the moving party has the burden of proving the absence of a genuine dispute of material fact, and all factual inferences are drawn in favor of the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## III. DISCUSSION

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Where, as here, there is no direct evidence of discrimination, a plaintiff may make his claim through circumstantial evidence, using the *McDonnell Douglas* burden-shifting framework. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff must carry the initial burden of establishing a prima facie case of racial discrimination, by a preponderance of the evidence. *Id.*; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). The proof required to establish a prima facie case may vary depending on the specific facts of the case (for example, whether it is a case of discriminatory

termination versus a case of failure to hire). *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations."); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) ("More than one formulation of the elements of a prima facie case exist."). Ultimately, to establish his prima facie case, Plaintiff must prove by a preponderance of the evidence that he was discharged from the position for which he was qualified under circumstances which give rise to a presumption of unlawful discrimination. *See Walker v. Mortham,* 158 F.3d 1177, 1184 n.10 (11th Cir. 1998) (explaining the prima facie case gives rise to a presumption, and not an inference, of intentional discrimination); *Burdine*, 450 U.S. at 254 ("Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.").

Establishing a prima facie case causes the burden to shift to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802; *Rioux*, 520 F.3d at 1275 (11th Cir. 2008). If the employer articulates such a reason, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to produce sufficient evidence showing the proffered reason is a pretext for unlawful discrimination. *Rioux*, 520 F.3d at 1275.

### A. Prima Facie Case

A plaintiff may establish a prima facie case of discrimination under Title VII through showing that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job.[4]

---

[4] Plaintiff cites footnote 4 of *Cooper-Houston v. Southern Railway Co.*, for the proposition that the requirement of a comparator (requirement (3)) only applies to cases in which a plaintiff has not been

*Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)); *Archie v. Frank Cockrell Body Shop, Inc.*, 581 F. App'x 795, 798 (11th Cir. 2014). In the Motion, Defendant argues Plaintiff has failed to establish a prima facie case of discrimination by failing to satisfy the third prong of the *Burke-Fowler* test—the "similarly situated" prong. (Motion 5-9).

In order to satisfy the "similarly situated" prong, Plaintiff must identify a comparator employee outside his protected class who is similarly situated "in all relevant aspects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). In his pleadings, Plaintiff identifies one comparator, Deputy Cory Tomblin, a white non-Hispanic officer whom he alleges received less punishment for substantially similar conduct. (Compl. ¶ 16; Resp. 11-12; Def. Facts [D.E. 47] ¶ 38).

On the night of October 27, 20012, while responding to a Code Three emergency call regarding a home invasion, Deputy Tomblin struck a pedestrian, who died as a result. (Def. Facts Ex. 9 [D.E. 47-10] at 1; Pl. Facts Ex. 1 [D.E. 56-1] at 6-7). In response, Sheriff Benton requested an administrative review and internal investigation regarding Deputy Tomblin's actions, which were both completed by Lieutenant Kenny Johnson. (Def. Facts Ex. 9 at 2; Def. Facts Ex. 10 [D.E. 47-11] ¶ 4). The internal investigation revealed: Deputy Tomblin initially responded to the call in Emergency Mode while within Lake Placid city limits, activating his

---

terminated. 37 F.3d 603, 605 n.4 (11th Cir. 1994). However, the Eleventh Circuit has applied the comparator element to discriminatory discharge cases in numerous cases since *Cooper-Houston*. *See, e.g.*, *Bentley v. Orange Cty., Fla.*, 445 F. App'x 306, 309 (11th Cir. 2011); *Cuevas v. Am. Exp. Travel Related Servs. Co.*, 256 F. App'x 241, 243 (11th Cir. 2007); *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323-24 (11th Cir. 2006); *Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The Court follows the more recent development in this area of the law and holds the analysis of an appropriate comparator applicable to this case. *See Nida v. Echols*, 31 F. Supp. 2d 1358, 1368-69 (N.D. Ga. 1998) (explaining its decision to disregard *Cooper-Houston* footnote 4).

emergency lights and siren, but deactivated this emergency equipment upon exiting the city (Def. Facts Ex. 9 at 3); Deputy Tomblin's vehicle struck the pedestrian while its lights and siren were deactivated (*Id.* at 4); a subsequent Florida Highway Patrol Traffic Homicide Investigation estimated Deputy Tomblin's speed at 84.7 MPH (*Id.*); and, although the call was a Code Three emergency, Deputy Tomblin admitted to not getting through to nor receiving permission from his immediate supervisor to respond in Emergency Mode, in violation of Sheriff's Office policy. (*Id.*; Def. Facts Ex. 1 – Part 2 at 31; Pl. Facts Ex. 2 [D.E. 56-2] at 18). Deputy Tomblin was ultimately found to have violated Sheriff's Office General Orders #2216.00(I.F.2.) and #2216.00(I.F.6.),[5] and was given a formal reprimand with three days suspension without pay, one year Corrective Action probation, and remedial training of General Order 2216.00. (Def. Facts Ex. 12 [D.E. 47-13] at 1; Def. Facts Ex. 13 [D.E. 47-14]).

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998), *opinion modified by* 151 F.3d 1321 (11th Cir. 1998)) (internal quotation marks omitted). Further, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable

---

[5]
>General Order #2216.00 (I.F.2.) Vehicles operating in emergency mode will make full and continuous use of all available emergency lights and siren to warn vehicle and pedestrian traffic along the emergency route.
>
>General Order #2216.00 (I.F.6.) The deputy shall immediately notify the on-duty supervisor advising them they're responding "Code 3."

(Def. Facts Ex. 12 at 1).

decisions and confusing apples with oranges." *Id*. "Misconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient."[6] *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (citing *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006)).

In the instant case, the Court first notes the significant difference in the quantity of infractions committed by Plaintiff and Deputy Tomblin. In Plaintiff's case, he was found to have driven in excess of 90 MPH on nine separate occasions, in violation of Sheriff's Office Policy.[7] (Def. Facts Ex. 1 – Part 2 at 44-52). Plaintiff also was found to have deactivated his MVR equipment in each of these nine instances, without once recording an explanation for doing so, also in violation of Sheriff's Office policy.[8] (*Id*.). These violations spanned a 40-day period.[9] (*Id*.) Deputy Tomblin, on the other hand, was found to have deactivated his emergency equipment and to have failed in requesting or receiving authorization to operate in Emergency Mode, both violations of Sheriff's Office policy, in one instance each.[10] (Def. Facts Ex. 12; Pl. Facts Ex. 2 at 15-19). Further, these infractions occurred on a single night. (Pl. Facts Ex. 2 at 15-19). Such differences in the quantity of infractions have been found to preclude a finding that

---

[6] Although the requirement that the misconduct be "nearly identical" was called into question by *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1333-34 (11th Cir. 2000), *overruled in part on other grounds by Manders v. Lee*, 338 F.3d 1304, 1333-34 (11th Cir. 2003) (en banc), the Court is bound to follow the "nearly identical" standard elicited in *Maniccia* rather than the "similarly situated" standard articulated in *Alexander*. *See Burke-Fowler*, 447 F.3d at 1323 n.2 ("[W]hen a later panel decision contradicts an earlier one, the earlier panel decision controls.") (citing *Walker v. Mortham*, 158 F.3d 1177, 1188-89 (11th Cir.1998)); *see also Archie*, 581 F. App'x at 798 n.1 (11th Cir. 2014).

[7] General Order #2216.00 (I.E.). Note 2, *supra*.

[8] General Order #4200.00 (IV.B.). Note 2, *supra*.

[9] The first instance of Plaintiff driving in excess of 90 MPH and deactivating his MVR equipment without explanation noted in the Report is March 20, 2013. The final instance noted in the Report is April 29, 2013.

[10] General Order #2216.00 (I.F.2.) and General Order #2216.00 (I.F.6.). Note 5, *supra*.

a proposed comparator is "similarly situated" to plaintiff. *See Maniccia*, 171 F.3d at 1369 (finding plaintiff was not similarly situated to comparators where each comparator was involved in a single incident of misconduct or alleged misconduct, whereas plaintiff committed at least four policy violations); *Bush v. Houston Cty. Comm'n*, 414 F. App'x 264, 267 (11th Cir. 2011) ("Employees who have committed multiple policy violations are not similarly situated to employees who committed only one such violation.") (citing *Maniccia*, 171 F.3d at 1369); *White v. Verizon Florida LLC*, No. 8:09-CV-1533-T-23TBM, 2010 WL 3942902, at *5 (M.D. Fla. Oct. 5, 2010) (holding comparators were not similarly situated to plaintiff, as, among other things, they had not repeatedly violated company policy).

The quality of Plaintiff and Deputy Tomblin's infractions are likewise substantively different. First, whereas Plaintiff was found at fault for repeatedly exceeding posted speed limits in non-Code Three emergency situations, Deputy Tomblin exceeded a posted speed limit in a verified Code Three emergency. (Def. Facts Ex. 1 – Part 2 at 6-28, 44-52; Pl. Facts Ex. 1 at 6-7). Therefore, unlike Plaintiff, Deputy Tomblin was not found in contravention of General Order #2216.00(I.E), which mandates adherence to traffic laws in non-emergency situations. (Def. Facts Ex. 1 – Part 2 at 30). Next, Plaintiff was found to have violated Sheriff's Office policy by repeatedly deactivating his MVR equipment without explanation and driving in an "unprofessional" manner while transporting a minor. (Def. Facts Ex. 6). Deputy Tomblin's infractions neither involved the misuse of MVR equipment nor the transport of another party. Deputy Tomblin's infractions were of a completely different type than those of Plaintiff, namely, failing to engage his emergency equipment in a Code Three emergency and failing to notify and receive approval from his supervisor regarding his Code Three response. (Def. Facts Ex. 12).

The similarities between Plaintiff and Deputy Tomblin's transgressions appear to be limited to the fact that both officers were speeding. While this act was found to be a policy violation as it pertained to Plaintiff, after internal investigations, Plaintiff and Deputy Tomblin were found to have committed different General Order violations. As stated by the Eleventh Circuit, "[w]e have previously held that a difference in the charged offenses can preclude a comparison for Title VII purposes." *Moore v. Alabama Dep't of Corr.*, 137 F. App'x 235, 239 (11th Cir. 2005) (citing *Maniccia*, 171 F.3d at 1368-69); *see also Rioux*, 520 F.3d at 1281 (finding the plaintiff and comparator not to be similarly situated where they were charged with different violations, even though the incidents at issue were, themselves, similar); *Jeudy v. Holder*, No. 10-22873-CIV, 2011 WL 5361076, at *9 (S.D. Fla. Nov. 7, 2011) (holding plaintiff failed to identify an appropriate comparator, as she had not identified "any employee who was charged with committing both of the violations upon which her termination was based or who committed two 'nearly identical' or extremely similar violations."). "The standard for similar conduct is a fairly rigorous one," and comparing Plaintiff to Deputy Tomblin, whose actions differ as to both the quantity and type of infractions committed, arguably amounts to a comparison of "apples with oranges," and is precluded by Circuit precedent. *Rioux*, 520 F.3d at 1281; *Maniccia*, 171 F.3d at 1368. Accordingly, Deputy Tomblin is not a "similarly situated" comparator to the Plaintiff, as required by *Burke-Fowler*.

In the Response, Plaintiff asserts that is not required to put forward a comparator to establish his prima facie case. (Resp. 5). The Court recognizes that the test in *Burke-Fowler* is not the only formulation of the prima facie case, and that a comparator therefore is not always a necessity. *See Rioux*, 520 F.3d at 1275-76 (stating, in the analogous case of an alleged racially-based demotion, proof of a comparator was not required to establish a prima facie case where

plaintiff established he was replaced by someone outside his protected class after his demotion); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."); *But see McCann*, 526 F.3d at 1375 (11th Cir. 2008) (holding summary judgment was appropriate due to the lack of a proper comparator in the prima facie case); *Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989) (same); *Reeves v. Yeager*, 298 F. App'x 878, 879 (11th Cir. 2008) (same).

In lieu of the *Burke-Fowler* test, with its requirement of a comparator, Plaintiff urges the Court to apply the test in *Evans v. McClain of Georgia, Inc.*, to determine whether he has established a prima facie case of discrimination. (Resp. 6). Under *Evans*

> A prima facie case of discriminatory discharge requires a plaintiff to show that he was a member of a protected class; he was qualified for the job; he was terminated despite his qualifications; and after his termination the position remained open and the employer continued to seek applicants of similar qualifications.

131 F.3d 957, 964 (11th Cir. 1997).

A review of the record reveals the conspicuous absence of evidence relating to the last component of the test set forth in *Evans*. Plaintiff has not shown that after his termination, his position remained open and the Sheriff's Office continued to seek applicants with qualifications similar to his. Plaintiff's effort to state a prima facie case for racial discrimination under the *Evans* test is therefore unavailing.

Additionally, the record contains no further evidence that would permit the Court to determine that Plaintiff was discharged from his position under circumstances giving rise to a presumption of discrimination—the ultimate benchmark to establish a prima facie case. *See Walker*, 158 F.3d at 1184; *Burdine*, 450 U.S. at 254 n. 7. Beyond his use of Deputy Tomblin as

a comparator, Plaintiff points to "[d]isparaging remarks concerning the Hispanic race . . . made by multiple members of the Sheriff's [O]ffice" and a "culture" or "atmosphere" in which it was acceptable to make racially disparaging remarks. (Compl. ¶ 20; *See* Obregon Depo. 28:19-31:19, 117:17-118:22). The racially disparaging remarks Plaintiff points to are "Driving while Mexican" and "Driving while Black." (Def. Facts Ex. 8 at 6). Plaintiff states these and other derogatory remarks were common at the Sheriff's Office but he does not attribute them to individuals responsible for the decision to terminate him, such as Major Paeplow or Sheriff Benton.[11] (*Id.*; Obregon Depo. 78:25-79:2, 88:20-89:6). "The Eleventh Circuit . . . has held that evidence of comments suggesting discriminatory animus can sustain a prima facie case only where a plaintiff demonstrates that the comments were in some way associated with the decision to fire [him]." *Blair v. Atlanta Gastroenterology Assocs.*, LLC, No. CIVA 105-CV-2811-TWT, 2007 WL 2001769, at *7 (N.D. Ga. July 3, 2007) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1322-23 (11th Cir.1998)). The discriminatory statements at issue, remote in time from the decision to fire Plaintiff and not made by those responsible for the decision, do not establish a prima facie case. *See Bessemer*, 151 F.3d at 1322-24 (holding supervisor's discriminatory remarks could not establish a prima facie case, as the supervisor was not the person who referred plaintiff to the discipline committee that ultimately terminated her and the referring individual did not rely on the supervisor's report); *Blair*, 2007 WL 2001769, at *7 ("[I]n order to establish a prima facie case based on racially discriminatory statements, a

---

[11] Plaintiff names Chief Deputy Mark Schrader as one of the individuals, along with Major Paeplow, who had the decision-making authority to terminate him. (Obregon Depo. 89:10-90:6). Plaintiff states that Chief Deputy Schrader was biased against Hispanics, including Plaintiff, due to their race; but Plaintiff is unable to provide any evidence for this assertion beyond the "vibe" or feeling he got from Chief Deputy Schrader. (*Id.* 89:10-92:22). Such evidence, or lack thereof, of discriminatory animus is insufficient to establish a prima facie case.

[11] As the Court holds summary judgment is warranted in this case, it need not be determined whether partial summary judgment should be granted under the after-acquired evidence rule. (*See* Motion 10-11).

claimant must be able to show that such statements had a direct impact on the employer's ultimate decision to terminate her employment.").

Having failed to put forward a "similarly situated" comparator, show that the Sheriff's Office sought applicants of similar qualifications after his termination, or present other evidence giving rise to a presumption of discrimination, Plaintiff has not established a prima facie case of racial discrimination, and summary judgment therefore is appropriate.[12]

### B. Defendant's Legitimate, Non-Discriminatory Reasons For Terminating Plaintiff and Evidence of Pretext

Even assuming that Plaintiff can establish a prima facie case, his discrimination claim must fail, as Defendant has demonstrated legitimate, non-discriminatory reasons for firing Plaintiff; and Plaintiff cannot raise a genuine issue of material fact as to pretext.

In the Motion, Defendant asserts Plaintiff was fired due to multiple violations of Sheriff's Office policy. (Motion 9). Further, in his Memorandum recommending Plaintiff's termination, Major Paeplow cites as reasons for his recommendation, Plaintiff's "propensity to drive at excessive speeds with a total disregard for General Orders concerning such," disregard for General Orders requiring documentation when MVR equipment is turned off, disregard for the safety of others on the highway, and disrespect shown when confronted about his actions. (Def. Facts Ex. 6). Defendant's articulation of legitimate, nondiscriminatory reasons for Plaintiff's termination shifts the burden to Plaintiff, who must produce sufficient evidence showing these proffered reasons were a pretext for discrimination. *See, e.g.*, *Burdine*, 450 U.S. at 256.

To establish pretext, Plaintiff must show that Defendant's proffered reasons were not the true reasons for his termination. *Id.* To accomplish this, Plaintiff must establish both that

---

[12] In the Response, Plaintiff asserts being a member of a protected class who was qualified for his employment and discharged "easily establishes a prima facie case." (Resp. 8). This is not the law. *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005) ("A plaintiff does not shift the burden to the defendant under *McDonnell Douglas* merely by stating that he was fired or treated unfavorably.").

Defendant's reasons for his termination were false, and that discrimination was the real reason. *See Archie*, 581 F. App'x at 798 (citing *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)) ("To establish pretext, a plaintiff must show both that the employer's reason was false, and that discrimination was the real reason."). At this stage, the Court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Ekokotu v. Boyle*, 294 F. App'x 523, 526 (11th Cir. 2008) (quoting *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)) (internal quotation marks omitted).

In arguing pretext, Plaintiff first asserts that he "did not violate the Defendant's work place rules." (Resp. 8). This argument is unavailing.[13] "Where an employee argues that he did not actually engage in misconduct, we have held that an employer may rebut this allegation by showing its good faith, honest belief that the employee violated a rule." *Stone & Webster Const., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1136 (11th Cir. 2012) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)). An employer is entitled to terminate an employee for an honest, but mistaken belief, as long as that belief was the non-discriminatory reason for its

---

[13] Plaintiff also disputes that his actions were serious enough to warrant his termination. (*See* Resp. 11 ("Plaintiff disputes that his driving was such that it merited termination; he did not receive any citation; [and] there is only hearsay evidence to support his allegedly poor driving of a juvenile offender to another County, a duty he was asked to perform on his day off."). "A plaintiff however, 'is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.'" *Jeudy v. Holder*, No. 10-CV-22873, 2011 WL 5361076, at *11 (S.D. Fla. Nov. 7, 2011), (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)); *see also Nix*, 738 F.2d at 1187 ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Jeudy*, 2011 WL 5361076, at *11 (quoting *Chapman*, 229 F.3d at 1030) (internal quotation marks omitted). The reasons Major Paeplow cites in his Memorandum recommending Plaintiff's termination are of a type that a reasonable employer could find sufficient to terminate an employee.

decision.  *See Elrod*, 939 F.2d at 1470 (explaining, in the analogous case of the Age Discrimination in Employment Act, whether plaintiff actually committed the violation at issue is immaterial, and instead what is relevant is whether the employer believed plaintiff committed the violation and, if so, whether this belief was the reason behind why plaintiff was discharged); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

At both his interview with Lieutenant Hood and the Pre-Disciplinary Hearing, Plaintiff admitted to Sheriff's Office policy violations and most of the associated predicate acts.[14] These admissions are sufficient to establish Defendant honestly believed Plaintiff committed the violations at issue. *Gerwens*, 874 F.2d at 1540 ("Admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct."). Further, Plaintiff has failed to present evidence that indicates the proffered reasons for his termination are unworthy of credence. Plaintiff attempts to do so by pointing to Deputy Tomblin as a similarly situated employee who was treated more favorably, (*see* Resp. 11-12); however, as discussed in Part III.A., *supra*, the significant differences in the quantity and quality of their misconduct precludes this argument from having significant weight.

Plaintiff also describes a "culture" or "atmosphere" in the Sheriff's Office, in which it was acceptable to make racially disparaging remarks (*See* Obregon Depo. 28:19-31:19, 117:17-118:22). However, Plaintiff does not attribute any of these derogatory remarks to the individuals

---

[14] At the interview Plaintiff admitted to driving in excess of 90 MPH in non-Code Three emergency situations (*See* Def. Facts Ex. 1 – Part 2 at 8, 12-14, 16-19, 25-27), turning off his MVR equipment without giving an explanation for doing so (*See id*. 10, 12-14, 17-19, 27), and driving "unprofessionally" while transporting a minor (*Id*. 20, 22, 27), in violation of Sheriff's Office policy. At the Pre-Disciplinary Hearing Plaintiff submitted a letter in which he "admit[s] to violating policy" and "agree[s] that there must be some kind of disciplinary action." (*Id*. 55).

directly responsible for the decision to terminate him, such as Major Paeplow or Sheriff Benton (*See id*. 78:25-79:4, 88:20-89:6 ),[15] or put forward sufficient evidence showing a pervasive culture of discrimination that could have infiltrated the decision making process regarding his termination. Accordingly, Plaintiff has failed to create a genuine issue of material fact with respect to Defendant's proffered reasons for his termination, and summary judgment is therefore warranted.[16]

### IV. CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDJED** that Defendant Sheriff Paul Blackman's Case Dispositive Motion for Summary Judgment **[D.E. 46] is GRANTED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida this 20th day of November 2017.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF

---

[15] Plaintiff does not provide sufficient evidence regarding the discriminatory "vibe" or feeling he got from Chief Deputy Schrader to establish pretext. *See* note 11, *supra*.

[16] As the Court holds summary judgment is warranted in this case, it does not need to reach the issue of whether partial summary judgment should be granted under the after-acquired evidence rule. (*See* Motion 10-11).